IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA,
SOUTHERN DIVISION

LETISHA MOORE,

    Plaintiff,

vs

CASE NO.: 4.09a196-RS/wcs

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT OF
JUSTICE, FEDERAL BUREAU OF PRISONS,

TRIAL BY JURY

    Defendants.

**PLAINTIFF'S MOTION FOR STAY UNTIL THE CLOSE OF DISCOVERY/
PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

*COMES NOW*, the plaintiff, Latisha Moore, and files this motion in response to the defendant's motion for summary judgment, and states the following:

**NARRATIVE SUMMARY OF UNDISPUTED FACTS**

1.     Plaintiff is a former inmate who was released from Bureau of Prisons ("BOP") custody on March 18, 2005. She was convicted of violating 21 U.S.C. 843(b). She was sentenced on January 11, 2002, in the District Court for the Northern District of Georgia to serve 48 months to be followed by one year of supervised release.

2.     Plaintiff was incarcerated at FPC Marianna from March 14, 2002, until December 27, 2002.

3.     On December 26, 2002, Plaintiff received an incident report after reporting sexual



harassment by a guard.

4. On or about June of 2004, plaintiff was an inmate of defendant's prison. Id.

5. On or about June of 2004, Gregg Dixon was a prison guard at the Prison Camp in Tallahassee, Florida, and had been give unfettered control of the maximum security area within the prison where the plaintiff and other female prisoners were housed. At the time of the rapes and assaults, the defendants knew that the prison guards had previously raped other inmates, but the defendant took no action to protect the plaintiff. When the plaintiff informed the supervisor of the prison guards of the rapes, she was punished and transferred to a more secure and dangerous prison. Id.

6. In or about November of 2006, the prison guards were found guilty of raping the plaintiff and other inmates. Id.

7. Afterward, plaintiff made a written request for damages. She was asked to file an administrative claim. As a result, plaintiff filed her administrative *claim* on March 5, 2008. The claim was not accepted because the defendant claim that it needed proof Roderick Graham was the legal representative of the plaintiff. Plaintiff felt the defendant was stalling, but she filed again on November 4, 2008. On December 3, 2008, the claim was rejected because it was time barred. The claim always met the notice requirements under the Federal Tort Claim Act. Id.

8. More importantly, the notice requirement under the Federal Tort Claim Act had been met when plaintiff reported the rape, and defendant investigated her claim. Id.

## ARGUMENT

Title 28 U.S.C. s 2675(a) establishes that as a prerequisite to maintaining a suit

8. More importantly, the notice requirement under the Federal Tort Claim Act had been met when plaintiff reported the rape, and defendant investigated her claim. Id.

## ARGUMENT

Title 28 U.S.C. s 2675(a) establishes that as a prerequisite to maintaining a suit against the United States under 28 U.S.C. s 1346(b) a plaintiff must present notice of his or her claim to the appropriate federal agency. *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978). Only after the claim has been denied or six months have passed can a plaintiff bring suit in federal court on the claim. *28 U.S.C. §2675(a)*. Defendants assert that plaintiff's tort claims are barred because plaintiff failed to present notice (i.e., exhaust administrative remedies) as required by the FTCA. The FTCA contains an express waiver of sovereign immunity for the purposes of bringing tort actions against the United States, *Id.*; **See** *Suarez v. United States,* 22 F.3d 1064, 1065 (11th Cir.1994), and provides the sole remedy for torts committed by the United States and federal employees acting in their official capacities, *Id.*; **See** *Brown v. Armstrong,* 949 F.2d 1007, 1012-13 (8th Cir.1991). Section 2675(a) of the FTCA provides that an administrative claim must be filed with the appropriate agency before a suit can be initiated under the FTCA. *28 U.S.C. § 2675(a)*. The regulations to the FTCA provide that such a claim should be "accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." *31 C.F.R. § 3.2(a)*; **See also** *28 C.F.R. § 14.2(a)*. This "sum certain" requirement is a prerequisite to district court jurisdiction over an FTCA claim, such that failure to include the prayer for money damages in the administrate claim divests a district court of jurisdiction over a subsequent case. **See** *Suarez,* 22 F.3d at 1065. The question is,

therefore, whether plaintiff's FTCA claims are barred for failure to state a "sum certain." The Court finds that, in light of the totality of the circumstances surrounding plaintiff's rape, plaintiff's FTCA claims are not barred.

The congressional purposes of FTCA are adequately served if the prerequisite administrative claim is only the giving of "notice of an accident within a fixed time." *Adams v. U.S.*, 615 F.2d 285 (5th Cir. 1980). Congress intended the §2675 requirement of presenting notice to be construed in light of the notice traditionally given to a municipality by a plaintiff who was allegedly injured by a municipality's negligence. *Id.* Congress deemed this minimal notice sufficient to inform the relevant agency of the existence of a claim. *Id.* In other words, an individual with a claim against the United States, therefore, satisfies §2675's requirement that "the claimant shall have first presented the claim to the appropriate Federal agency" if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim. *Id.* This information alone allows the claimant to maintain a subsequent action in the district court following the denial of his or her claim by the agency or the passage of six months. *Id.*

Without presenting any evidence that it attempted to elicit more information about Plaintiff's rape, investigated the rape, or made steps toward settlement, the government now moves to dismiss plaintiff's claims on the ground that it did not have enough information about plaintiff's damages. The Court will not advance the policy of authorizing the government to lead unwitting tort claimants blindly down the pathway toward dismissal. *Benrad v. Calejo, et al.*, 17 F.Supp.2d 1311( S.D. FL., 1998). To allow such action by the government would serve neither the policies behind the sum certain requirement nor the

interests of justice. Also, the plaintiff's status as a ward of the government, the FBI investigation, and the previous criminal case against the plaintiff's rapist should have put the government on notice of plaintiff's claims and the extent of the injuries he suffered. *Id.;Williams v. United States,* 693 F.2d 555 (5th Cir.1982) In fact, given that the plaintiff was a victim of a crime, federal law required that the defendant investigated the extent of plaintiff's injuries to determine a sum certain for restitution. (Ex B, pg \*\*). The plaintiff informed the government of the rape while she was in federal custody; and afterward, the rape was investigated and the perpetrators were convicted. Given the facts in this case, plaintiff has fulfilled the "sum certain" requirement by giving "notice in such a form complies with the spirit of" this Circuit's prior rulings and the policies behind the administrative procedures of the FTCA. *Id.*

The plaintiff also requests that the court stays the motion for summary judgment until the defendant can conduct discovery, and determine the extent of the government's investigation into her rape.

*WHEREFORE, PREMISES CONSIDERED*, plaintiff requests that this Honorable court denies the defendant's motion for summary judgment.

Letisha Moore
**Pro se**
P.O. Box 43334
Birmingham, AL 35243

### CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November 2009, a copy of the foregoing document was served on following parties by U.S. Mail to wit:

ROBERT D. STINSON
Assistant U.S. Attorney
Fla Bar No. 319406
111 N. Adams Street, 4th Floor
Tallahassee, FL 32301

s/ Letisha Moore
**Plaintiff**

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA,
SOUTHERN DIVISION

| | |
|---|---|
| LETISHA MOORE, | ) |
| Plaintiff, | ) ) ) |
| vs | ) CASE NO.: _____ |
| UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF PRISONS, | ) ) ) TRIAL BY JURY ) |
| Defendants. | ) ) |

## DECLARATION OF LETISHA MOORE

1.  My name is Letisha Moore. I have personal knowledge and familiarity with the facts in this declaration.

2.  Plaintiff is a former inmate who was released from Bureau of Prisons ("BOP") custody on March 18, 2005. She was convicted of violating 21 U.S.C. 843(b). She was sentenced on January 11, 2002, in the District Court for the Northern District of Georgia to serve 48 months to be followed by one year of supervised release.

3.  Plaintiff was incarcerated at FPC Marianna from March 14, 2002, until December 27, 2002. On December 26, 2002, Plaintiff received an incident report after reporting sexual harassment by a guard.

4.  On or about June of 2004, plaintiff was an inmate of defendant's prison. Id.

5. On or about June of 2004, Gregg Dixon was a prison guard at the Prison Camp in Tallahassee, Florida, and had been give unfettered control of the maximum security area within the prison where the plaintiff and other female prisoners were housed. At the time of the rapes and assaults, the defendants knew that the prison guards had previously raped other inmates, but the defendant took no action to protect the plaintiff. When the plaintiff informed the supervisor of the prison guards of the rapes, she was punished and transferred to a more secure and dangerous prison. Id.

6. In or about November of 2006, the prison guards were found guilty of raping the plaintiff and other inmates. Helen Smith was my victim specialist. She inquired into the nature and extent of my injuries.

7. Prior to the trial, the government investigated my claim filed in 2002. At some point, the government decided to file charges against the guards for their forcibly causing me and others to have sex with them while I was in custody.

8. Afterward, plaintiff made a written request for damages. She was asked to file an administrative claim. As a result, plaintiff filed her administrative *claim* on March 5, 2008. The claim was not accepted because the defendant claim that it needed proof that Roderick Graham was the legal representative of the plaintiff. Despite the plaintiff believing that the defendant was stalling, she filed again on November 4, 2008. On December 3, 2008, the claim was rejected. The claim always met the notice requirements under the Federal Tort Claim Act.

9. More importantly, the notice requirement under the Federal Tort Claim Act had been met when plaintiff reported the rape, and defendant investigated her claim.

10.   More importantly, the notice requirement under the Federal Tort Claim Act had been met when plaintiff reported the rape, and defendant investigated her claim.

11.   The plaintiff needs to conduct discovery to completely respond to the defendant's motion for summary. More specifically, the plaintiff needs to look at the investigation conducted by the government to show exactly what the government knew and when.

**I declare under penalty of perjury that the above and foregoing is true and correct to the best of my knowledge and belief.**

*Letisha Moore* (signature)

Letisha Moore
**Pro se**
P.O. Box 43334
Birmingham, AL 35243

# MIOG PART 2 SECTION 34. |VICTIM ASSISTANCE|PROGRAM |(VAP)|

SENSITIVE

\*\*EffDte: 03/12/2004 MCRT#: 1328 Div: D6 Cav: SecCls:

## 34-1 INTRODUCTION

The purpose of these MIOG guidelines is to establish procedures to be followed by the Federal Bureau of Investigation (FBI) | in responding to the needs of crime|victims.|

\*\*EffDte: 03/12/2004 MCRT#: 1328 Div: D6 Cav: SecCls:

## 34-2 DEFINITIONS USED THROUGHOUT THESE GUIDELINES

(1) The term "adult attendant" means an adult who accompanies a child witness throughout the judicial process for the purpose of providing emotional support.

(2) Two standards are applied to compliance with victim rights and assistance requirements: "mandatory" and "best efforts." The term "best efforts" means that, in the spirit of full compliance with legislation regarding rights and services for victims, Agents and employees engaged in the investigation or detection of crime shall | ensure where possible that victims are|afforded|the rights described in Title 42, USC, Section 10606. The term "mandatory" means that | Agents and employees|must|comply with requirements found in Title 42, USC, Section 10607.

| (3) The term "child" means a|person under|the age of 18, who is or is alleged to be:

(a) A victim of a crime of physical abuse, sexual abuse, or exploitation; or

(b) A witness to a crime committed against another person.

(4) The term "child abuse" means the physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child. The term "child abuse" does not include, however, discipline administered by a parent or legal guardian to his or her child provided it is reasonable in manner and moderate in degree and otherwise does not constitute cruelty.

(5) The term "domestic violence" includes felony or misdemeanor crimes of violence, including threats or attempts, committed by a person who cohabitates or has cohabitated with the victim as a|spouse, by|a current or former spouse of the victim, by a person with whom the victim shares a child in common, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction, or by any other adult person

prospective purchaser or contest or sweepstakes participant. Title 18, USC, Section 2325 (1)(A)(B).

(23) The definition of "victim" from Title 42, USC, Section 10607(e)(2), which applies to the majority of the statutory rights and services and generally for purposes of the AG Guidelines on Victim and Witness Assistance (2000) is as follows:

(a) the term "victim" means a person who has suffered direct physical, emotional/psychological, or pecuniary harm as a result of the commission of a crime, including:

1. In the case of a victim that is an institutional entity, an authorized representative of the entity.

2. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, one of the following (in order of precedence): a spouse; a legal guardian; a parent; a child; a sibling; another family member; or another person designated by the court.

(24) "Victim losses" includes: (a) medical services relating to physical, psychiatric, or psychological care; (b) physical and occupational therapy or rehabilitation; (c) necessary transportation, temporary housing, and child care expenses; (d) lost income; (e) attorney's fees, plus, in the case of domestic violence victims, any costs incurred in obtaining a civil protection order; and (f) any other losses suffered by the victim as a proximate result of the offense and/or as a result of participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense. See also Title 18, USC, Section 3663 (b)(1) and 3663(e)(1).

(25) The term "witness" means a person who has information or evidence concerning a crime and provides information regarding his/her knowledge to a law enforcement agency. Where the witness is a minor, the term "witness" includes an appropriate family member or legal guardian. The term "witness" does not include a person who is solely a defense witness.

**EffDte: 03/12/2004 MCRT#: 1328 Div: D6 Cav: SecCls:

## 34-3 |VAP|STATUTORY BACKGROUND AND STANDARDS FOR COMPLIANCE

(1) Starting with the Victim and Witness Protection Act of 1982 (VWPA) and continuing through the later legislation, Congress established victims' rights and directed the Justice Department and other departments and agencies of the federal government engaged in the detection, investigation, or prosecution of crime to make their "best efforts" to see that crime victims are accorded these rights and provided with assistance services. These rights and services are addressed in different parts of federal law, but the majority can be found in Title 42, USC, Sections 10606 and 10607. The list of rights which federal agencies are required to accord to victims, commonly referred to|as|the "victims' bill of rights," appears as Title 42, USC, Section 10606. Title 42, USC, Section 10607 defines specific services that federal agencies are mandated to provide to crime victims. The VWPA provided that services be accorded only "where

possible"; however, the Victims' Rights and Restitution Act of 1990, Title V of the Crime Control Act of 1990 stated that the services described in Section 10607 "shall" be provided. Thus, Section 10607 mandates that federal government personnel provide victims with the described services. A recent legal opinion issued by Department of Justice Office of Legal Counsel interprets a court's decision relating to Section 10607 to mean that an agency's responsible official must provide the services to victims; failure to provide the mandatory services to a victim could be the basis for a civil cause of action against the federal government under the Federal Tort Claims Act. The statute appears to allow for some individual judgment in determining how and when to provide the services. Other specialized provisions dealing with certain types of victims and crimes appear elsewhere in Titles 42 and 18, with provisions specifically dealing with child victims and witnesses appearing in Title 18, USC, Section 3509.

(2) More recent legislative provisions continue to expand victims' rights in other ways. The Violent Crime Control and Law Enforcement Act of 1994 established mandatory restitution for four categories of victims: domestic violence, sexual assault, sexually exploited children and other abused children, and telemarketing fraud victims. The Antiterrorism and Effective Death Penalty Act of 1996 expanded mandatory restitution to virtually all crimes committed in violation of Title 18 of the U.S. Code. It also requires that closed circuit viewing of the trial be made available for victims when there is a change of venue of more than 350 miles. The Victim Rights Clarification Act of 1997 gives victims the right to attend|the|trial even though they may testify during the sentencing portion of the trial. The Victims of Trafficking and Violence Protection Act of 2000 provides for special assistance for victims of human trafficking and also directs the Justice Department (DOJ) to establish a compensation program for U.S. nationals who are victims of terrorism outside the U.S.

(3) These laws were enacted to protect and enhance the necessary role of crime victims in the criminal justice process, and were further interpreted by the Attorney General Guidelines (AGG) on Victim and Witness Assistance. The AG Guidelines provides specific direction to DOJ components to ensure that the statutory requirements are followed. The Guidelines are periodically updated, and the 2000 Guidelines supersede the 1995 version.

(4) The AG Guidelines use the word "shall" where "shall" appears in a statute. Employees are reminded that the statutory provisions are mandatory. When the AG Guidelines use the word "should," the employee is expected to take the action or provide the service described unless there are appropriate, articulated reasons not to do so. Employees are consequently expected to use their sound judgment and discretion in deciding how best to accord victims the rights and services required under law and the AG Guidelines. In all matters there is a presumption in favor of providing rather than withholding assistance and services to victims and witnesses of crime. These services are described in Section 34-6(3)(b) through (h).

**EffDte: 03/12/2004 MCRT#: 1328 Div: D6 Cav: SecCls:

## 34-4 ELIGIBILITY REQUIREMENTS FOR|VAP|SERVICES

While special attention should be paid to victims of serious violent crime, ALL victims of federal crimes who have suffered | direct physical, emotional/psychological, and|pecuniary|harm shall be identified and shall receive the notice, assistance, and protection to which they are entitled under the law. If the FBI decides to not pursue an investigation, then it is appropriate to inform the victim that the investigation is not proceeding or is being referred to local authorities, and to provide information about and referrals for victim services available through community resources, if circumstances warrant such assistance. Victims of certain types of crimes, such as sexual assault or child abuse, may be eligible for special services. These requirements and services are described in the Attorney General Guidelines for Victim and Witness Assistance (2000). Consult the Victim Specialist (VS) within your division or the Office for Victim Assistance at FBIHQ for a copy of the AGG or for clarification. | Additionally, the current AGG can be found in|its|entirety|at|the | Office for Victim Assistance section on the|FBI|Intranet site.

(1) Accordingly, as a policy matter, the AG Guidelines | |exclude|from the definition of a "victim" any person who is culpable for the crime being investigated or prosecuted. This exclusion does not encompass persons who may be culpable for some other crime, even if the crimes are related. Thus, a victim who may have committed some crime other than the one under investigation is considered a victim for purposes of the AG Guidelines rights and services. A person's status as an inmate or illegal alien does not disqualify that person from being considered a victim. Examples of such persons include, but are not limited to, the following:

(a) Illegal aliens who are involuntary servitude victims:

The illegal aliens may have agreed to be smuggled into this country, but once in the country, the aliens are held against their will in conditions of involuntary servitude.

(b) Transportation and trafficking victims:

In some cases, a person may engage in prostitution as part of an interstate transportation for illegal sexual activity or in aid of some other trafficking crime. That person should not be disqualified from being considered a victim if the person otherwise fits the definition of a victim and is not culpable for the trafficking offense.

(c) Inmates victimized in prison:

Inmate victims are eligible for notice and some services, unless they are in some way culpable for the crime in which they were victimized. Officials may exercise discretion in the timing of "earliest possible" notice to inmate victims if providing the notice to the inmate victim poses a serious security risk to the offender inmate. Some forms of assistance to these victims, especially financial, by the FBI may be inappropriate as inmates are already provided medical and mental health services free of charge by the institution in which they are housed.

(d) Victims of witness intimidation:

A witness who is threatened or injured as the result of an attempt by another person to prevent the witness from